Filed 6/9/15  P. v. Cousin CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

PAUL EUGENE COUSIN,

    Defendant and Appellant.

E061443

(Super.Ct.No. RIF1401312)

OPINION

APPEAL from the Superior Court of Riverside County.  Irma Poole Asberry, Judge.  Affirmed with modification.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Paul Eugene Cousin appeals from a judgment of conviction for robbery.  (Pen. Code, § 211.)[1]  We affirm the judgment, as modified.

## STATEMENT OF FACTS

The victim, Cleveland "Roosevelt" Rush, called police stating that "I want to report a robbery.  [¶] . . . [¶]  Um, I was coming out of the motel and this guy jumped out and . . . [¶] . . . [¶] . . . [t]ook like a sharp nail object to my neck and took $20 from me."  Rush gave a general description of the robber but did not indicate that he could identify him.  He said he was then at a Winchell's.  At trial, however, Rush testified that he had *not* been robbed and that he had called 911 because he had lent money to defendant that evening and wanted it back.  Rush further testified that after giving defendant the money, he himself walked to a gas station convenience store where he intended to meet someone and buy drugs.  At this point Rush realized he no longer had enough money.  He first called his dealer to delay the transaction, and then called 911.

Perhaps realizing that his story was illogical, Rush further explained that he had been high on drugs at the time and not thinking sensibly when he contrived the supposed plan to get the police to take the $20 back from defendant.  He explained his failure to tell the police dispatcher that defendant was the robber was also the result of his impaired state.  The same justification was given for his reported location of the robbery, a motel some distance from anywhere he testified he was during the evening in question, as well as what he described as his false report of his location.

---

[1]  All further references are to the Penal Code unless otherwise specified.

Rush admitted that he had spoken with police that evening and confirmed that the robbery happened near the Comfort Inn motel, as he had said in the 911 call. He also asserted that he had not identified the robber as defendant when he spoke to the responding officers. Rush further testified that he had told police that the robber had threatened him with a nail to his neck because he was "high . . . I was making it up as I went along." He then apologized to defendant from the witness stand.

Finally, Rush admitted that he was in custody on a probation violation for petty theft, and that being a "snitch" could lead to unpleasant repercussions on the street.

The officer responding to the 911 call eventually located Rush, although not at the Winchell's establishment. Rush told him that a person he identified as defendant by name had come up behind him and asked what he had in his hand. Defendant then thrust at him with a large nail or spike and demanded money. Rush told the officer that he complied.

Shortly thereafter, defendant was detained by a second officer based on the name and description given by Rush. Rush was driven to that location, where he identified defendant by saying, "That's him right there."

The first officer observed no indication that Rush was under the influence of a narcotic or controlled substance.

After being detained by the second officer, defendant spontaneously told this officer, "I ain't robbed nobody." When asked by the officer why he mentioned robbery, defendant stated, "It ain't that hard to figure out." He then shouted out to a female that "Roosevelt's trying to say that I robbed him." The officer had not identified the victim (Rush) by name. After being searched, defendant told the officer "you didn't even find no money on me," although the officer had not identified the property taken.

When questioned by other officers, defendant claimed that he was the victim and that Rush had pulled a knife on him when he, defendant, refused to buy drugs from Rush. He never mentioned receiving a loan from Rush.

DISCUSSION

A.

Defendant first relies upon the corpus delicti rule to argue that there was insufficient evidence that a robbery had been committed. That rule requires that the charged crime be established by evidence other than the accused's extrajudicial statements. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1180 [holding that "Proposition 8" did not abrogate the corpus delicti rule in this respect].) The prosecution's obligation is merely to introduce sufficient other evidence to constitute a prima facie case that the charged crime was committed. (*People v. Martinez* (1994) 26 Cal.App.4th 1098, 1104.) The defendant's statements then become fully admissible to strengthen the prosecution's case. (*People v. Valencia* (2008) 43 Cal.4th 268, 297; *People v. Alvarez*, *supra*, 27 Cal.4th at p. 1181.)

4

Viewed under these rules, it appears obvious that the out of court statements of Rush were sufficient to establish that a robbery had occurred and, in connection with defendant's own statements, made up constitutionally substantial evidence in support of the verdict. (See *Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Rountree* (2013) 56 Cal.4th 823, 852-853.) But defendant raises two arguments against this conclusion.

First, he points out that at trial, Rush recanted his earlier version of what happened and testified that it was untrue. However, his statements were admissible as substantive evidence as prior statements inconsistent with his trial testimony. (Evid. Code, § 1235[2]; *People v. Guerra* (2006) 37 Cal.4th 1067, 1144.) As the Law Revision Commission Comment to the statute points out, "[i]n many cases, the inconsistent statement is more likely to be true than the testimony of the witness at the trial because it was made nearer in time to the matter to which it relates and is less likely to be influenced by the controversy that gave rise to the litigation." The jury was fully entitled to so conclude in this case.

---

[2] "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770." The latter relates to the opportunity for the parties to examine the declarant with respect to the prior statement.

Second, defendant notes that the jury found *not true* the allegation that defendant personally used a deadly and dangerous weapon. (§ 12022, subd. (b)(1).) He therefore argues that the jury must have *completely* disregarded Rush's testimony, and convicted him *solely* upon his own statements.

This conclusion does not follow. It is perfectly reasonable to suppose that the jury was not persuaded by the sketchy evidence about the nail allegedly used by defendant that it was in fact a "deadly or dangerous" weapon.

### B.

Defendant also argues that he was improperly sentenced on one of six prior prison term enhancements because he had not completed that term at the time of the current offense. (See § 667.5; *People v. Tenner* (1993) 6 Cal.4th 559, 563.) The People concede both that point and that because defendant was still subject to a term of mandatory supervision following his most recent qualifying conviction (see § 667.5, subd. (b), as amended), he had not "completed" that term.

Accordingly, the sixth prior prison term finding should be stricken and one year subtracted from defendant's sentence.

# DISPOSITION

The judgment of conviction is affirmed; the sentence is modified to a total of eight years in prison. The trial court is directed to issue an amended abstract of judgment in accordance with this opinion above and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
                                    J.

We concur:


RAMIREZ
              P. J.


McKINSTER
              J.